# Richmond.

## W. S. Hoge & Brother, a Corporation, v. Prince William Co-operative Exchange, Inc.

### February 26, 1925.

1. Sales—*Action by Seller—Proof of Damage to Seller—Case at Bar.*—In the instant case, an action by seller against purchaser for refusal to accept goods purchased, there was no evidence whatever in the record to show that plaintiff had been damaged at all. So far as the record goes there might have been an advance in the price of everything sold, and the failure of the purchaser to order out goods purchased would have enured to the plaintiff's benefit. There was a verdict and judgment for defendant.

   *Held:* That no other judgment than one for the defendant could have been possible, even assuming every assignment of error by plaintiff to have been well taken.

2. Sales—*Action by Seller—Proof of Damage to Seller—Excuse for not Proving Damage—Case at Bar.*—In the instant case, an action by seller against purchaser for refusal to accept goods purchased, there was no evidence whatever in the record to show that plaintiff had been damaged at all. The orders of the purchaser were taken by an agent subject to confirmation by the seller and as the trial court excluded these confirmation memoranda, plaintiff argued that it would have been futile to offer evidence of damage, since this ruling took the heart out of the plaintiff's case.

   *Held:* That if the confirmation memoranda had been all of plaintiff's evidence and had plaintiff ceased to press for judgment after their rejection, there would have been force in this position. But other evidence tending to show ratification was introduced, and after the memoranda were excluded the plaintiff continued to take testimony and insisted that the evidence in the record was sufficient to show that the verdict and judgment for defendant was wrong.

3. Damages—*Proof of Injury.*—Before one can recover damages it must appear that some injury has been suffered.

4. Appeal and Error—*Reversal—Failure to Award Nominal Damages.*—Failure to award nominal damages is no ground for reversal, unless some right other than the right to recover money is involved.

5.  SALES—*Action by Seller—Second Contract Superseding Original Con-
    tract—Judgment for Defendant—Case at Bar.*—In the instant case, an
    action by seller against buyer of dairy food, there was only evidence
    before the jury to show that part of the dairy food ordered had been
    taken by the defendant and that a controversy had arisen as to the
    liability on the remainder of the purchase and that it was finally
    agreed between plaintiff and defendant that if defendant would for
    the following year purchase all of its dairy food from plaintiff, as a
    consideration therefor, the old contracts would be set aside and can-
    celled.  No objection can be urged to such an agreement and there was
    no evidence to show that the new contract was not carried out.

    *Held:*  That no other verdict than one for defendant was possible.

6.  CONTRACTS—*Breach—Proof of Breach.*—One who complains of a breach
    of contract must show the breach.

7.  SALES—*Sales by Agent Subject to Confirmation—Confirmation Imposing
    Additional Conditions—Case at Bar.*—In the instant case, an action
    by seller against buyer, orders were given to seller's agent subject to
    acceptance by seller.  In accepting the orders seller imposed addi-
    tional conditions.

    *Held:*  That these modified acceptances amount in substance to new
    offers which in turn had to be accepted before the contracts could be
    closed.  But as acceptance need not be express, an order to ship
    would have constituted a new and valid contract.

8.  CONTRACTS—*Acceptance—Varying Terms.*—A proposal to accept, or
    acceptance upon terms varying from those offered, is a rejection of
    the offer.

9.  SALES—*Sales by Agent—Acceptance—Evidence—New Contracts—Case at
    Bar.*—In the instant case, an action by seller against buyer, the sales
    were made by agent of seller subject to acceptance by the seller.  In
    accepting the order the seller modified the terms and there was evi-
    dence to show acceptance of the new terms by the buyer; and that
    after some negotiations a new contract was substituted for the old,
    which new contract was never broken.

    *Held:*  That while the memoranda of acceptance by the buyer were
    once relevant, upon proof of the substituted contract they ceased to
    have any bearing on the issue and were properly excluded.

10. SALES—*Variance Between Order and Confirmation—Time of Shipment.*—
    In the instant case, an action by seller against buyer, the sale was
    made by an agent of seller subject to confirmation by seller.  On the
    order was endorsed, "to be shipped when ordered," and on the con-
    firmation slip was written, "to be shipped when ordered prior to
    October 1, 1920."  The confirmation slip also provided that the
    seller should not be liable for nondelivery for causes beyond its con-
    trol.

    *Held:*  That the minds of the parties never met as the confirmation slip
    was a material variation from the order; and that the additional fact

that goods were shipped in 1921 did not change the situation where the evidence was silent as to why they were shipped and there was nothing to connect the shipment with the original order except that the price was the same.

11. APPEAL AND ERROR—*Harmless Error—Sales—Acceptances by Seller of Orders—Exclusion of Acceptances from Evidence.*—In an action by seller against buyer, where sales were made by agent of seller subject to seller's acceptance, where the acceptances of seller differed substantially from the orders, the acceptances, if in evidence, could but show that the orders as given were never confirmed and their exclusion, at most, was harmless error where judgment was for defendant and should be disregarded on appeal.

12. SALES—*Action by Seller Against Buyer—New Contract—Relevancy of Evidence—Case at Bar.*—In the instant case, an action by seller against buyer, a considerable part of the subject of the sale, dairy food, had been taken by the buyer and a controversy had arisen as to the liability of the buyer on the remainder of the purchases, and it was finally agreed that if the buyer would for the following year purchase all of its dairy food from the seller, as a consideration therefor, the old contract would be set aside and cancelled. Seller was asked, "how much dairy food did they order from you during that year?"

*Held:* That this question was relevant, but as there was nothing to show what the answer would have been the court's action in refusing to permit the question could not be reviewed.

13. APPEAL AND ERROR—*Refusal to Permit Witness to Answer Question— What Answer Would Have Been.*—An appellate court will not review the action of a trial court in refusing to permit a witness to answer a question when it is not shown what answer would have been made to the question.

Error to a judgment of the Circuit Court of Prince William county in an action of trespass on the case in assumpsit. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*T. E. Didlake,* for the plaintiff in error.

*Robert A. Hutchison,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

The plaintiff is a Washington corporation, engaged in the grain and feed business there, while the defendant is a Virginia corporation doing business in Prince William county. On April 22, 1920, the defendant, through its general manager, J. J. Conner, gave to plaintiff's traveling salesman, F. R. Pierce, an order for twenty-five tons of dairy food at $75.00 per ton to be shipped in June, and on the same day another order for a like amount at $76.50 per ton to be shipped in July, and on the same day another order for a like amount at $77.00 per ton to be shipped in August, and on the same day another for sixty tons at $77.50 per ton to be shipped in September. These orders were in writing and taken subject to confirmation by the vendor. On each order was printed "all orders taken subject to car shortage, traffic and other conditions beyond our control." These orders were confirmed, it is charged, conditionally; on each acceptance is this endorsement: "If unable to fill this order by reason of fire, flood, accident, strike, traffic and other causes beyond our control, it is understood and agreed that we shall not be liable to you in damages for nondelivery of same."

On June 4th, and through the same parties, another order was placed for one hundred and fifty tons of dairy food at $73.95 per ton, "to be shipped when ordered." On this order was printed: "All sales subject to our confirmation." This sale was confirmed June 5th with these conditions endorsed on the confirmation memorandum: "To be shipped November 30th or sooner at your option," and "if unable to fill this order by reason of causes beyond our control, it is understood and agreed that we shall not be liable to you in damages for nondelivery of the same."

On June 9th Conner called at plaintiff's place of business and placed an order with it through W. S. Hoge,

Jr., its secretary, for one hundred and fifty tons of dairy food at prices ranging from $79.00 to $81.00 per ton. This order was confirmed in writing by the vendor on the same date, on which confirmation appears: "If unable to fill this order by reason of cause beyond our control, it is understood and agreed that we shall not be liable to you in damages for nondelivery of same."

On June 29, 1920, Conner placed with Pierce an order for twenty-five tons Old Process oil meal at $68.50 per ton. This order was in writing and on it appears: "To be shipped when ordered." It was confirmed June 29th. On the confirmation is written: "To be shipped when ordered prior to October 1, 1920," and "if unable to fill this order by reason of causes beyond our control, it is understood and agreed that we shall not be liable to you in damages for nondelivery of same."

And finally, on September 22nd, R. L. Lewis, then general manager for the defendant company, placed with said Pierce an order for sixty tons of cotton seed meal at $60.00 per ton. In this order was written: "All sales subject to our confirmation" and "to be shipped las. November 2nd December." On September 24th this was confirmed subject to these conditions: "If unable to fill this order by reason of causes beyond our control, it is understood and agreed that we shall not be liable to you in damages for nondelivery of same."

These goods or a large part of them were never ordered out, and so this action was brought. It matured in due season, came on to be heard and was submitted to a jury. There was a verdict for the defendant which the plaintiff moved to set aside as contrary to the law and the evidence, and as being without evidence to support it. This the court declined to do and entered judgment in accordance therewith. To all of which the plaintiff excepted.

[1-4] If we assume every assignment of error to be well taken, still no other judgment would have been possible.

There is no evidence whatever in this record to show that the plaintiff has been damaged at all. So far as it goes there might have been an advance in the price of everything sold and the failure of the vendee to order out goods purchased would have enured to the plaintiff's benefit, but this is mere speculation. It is more probable that the market went off and that the vendor lost, but this, too, is speculation.

It is true that these confirmation memoranda were excluded and it is said that with them excluded it would have been futile to offer evidence of damage, since this ruling took the heart out of the plaintiff's case. Had they been all of the plaintiff's evidence and had it ceased to press for judgment after their rejection, there would have been force in this position. But that is not what happened. Other evidence tending to show ratification was introduced, and after these memoranda were excluded the plaintiff continued to take testimony, and is now insisting that this additional evidence in the record is sufficient to show that the verdict and judgment is wrong and should be set aside. Moreover, it insists that the nominal damages should in any event have been given. Before one can recover damages it must appear that some injury has been suffered. *Budowitz* v. *Commonwealth*, 136 Va. 227, 118 S. E. 238; *Kimball* v. *Borden*, 97 Va. 477, 34 S. E. 45. Failure to award nominal damages is no ground for reversal unless some right other than the right to recover money is involved. *Briggs* v. *Cook*, 99 Va. 273, 38 S. E. 148; *Swift & Co.* v. *Newport News*, 105 Va. 108, 52 S. E. 821, 3 L. R. A. (N. S.) 404.

We might, with propriety, close this opinion at this

point, but in deference to the earnestness with which
the case was presented will advert briefly to those as-
signments of error that appear to merit consideration.

The verdict was plainly right.

[5, 6] When this cause was submitted to the jury these
memoranda of confirmation had been stricken out, as
was that evidence which related to the purchase of two
tons of oil meal in 1921. There was only evidence left
to show that a considerable part of the dairy food had
been taken, and that a controversy had arisen as to the
liability of the defendant on the remainder of those
purchases and was dealt with thus.

Conner was sent to Washington in the latter part of
1920 to see if some settlement could not be effected. It
was finally agreed between him and the plaintiff corpo-
ration that if the defendant would for the following year
purchase all of its dairy food from it, as a consideration
therefor, the old contracts dealing with this dairy food
would be set aside and cancelled. To such an agree-
ment no objection can be urged. 9 Cyc. 593; 21 Am.
& Eng. Enc. of Law (2nd ed.), 676; 3 Elliott on Con-
tracts, section 1859. It is possible that this new con-
tract was not carried out, but the evidence does not
show it and one who complains of the breach must show
the breach. Since this was not shown, no other verdict
was possible.

[7-9] It is next said that these memoranda of con-
firmation were improperly kept from or withdrawn from
the jury's consideration.

Sales were not absolute until confirmed by the vendor.
Until acceptance, orders but amounted to an offer to
purchase upon conditions named. That these accept-
ance, did impose additional conditions is patent.

"A proposal to accept or an acceptance, on terms
varying from those offered, is a rejection of the offer."

*Nat. Bank* v. *Hall*, 101 U. S. 50, 25 L. Ed. 822; *Railway Co.* v. *Columbia Rolling Mill*, 119 U. S. 149, 7 S. Ct. 168, 30 L. Ed. 376; *Edichal Bullion Co.* v. *Columbia Gold Mining Co.*, 87 Va. 641, 13 S. E. 100; *Virginia Hot Springs Co.* v. *Harrison*, 93 Va. 569, 25 S. E. 888; 1 Chitty on Contracts (11th Amer. ed.), 15; Parsons on Contracts (6th ed.), 476; *American Agricultural Co.* v. *Kennedy & Crawford*, 103 Va. 171, 48 S. E. 868; *Gibney & Co.* v. *Arlington B. Co.*, 112 Va. 117, 70 S. E. 485.

These modified acceptances amount in substance to new offers which in turn had to be accepted before the contracts could be closed. But exceptance need not be express. It may be shown by the conduct of the parties. The plaintiff might have endorsed upon these orders any lawful condition. In such circumstances an order then to ship would have been an acceptance and would have constituted a new and valid contract.

We have seen that there was evidence tending to show acceptance of the new terms written into the dairy food orders and that after negotiations a new contract was substituted in the room and stead of the old, which, so far as this record shows, was never broken. Thus this evidence, once relevant, ceased to have any bearing on the issue and was properly excluded. This new and substituted contract did not deal with the Old Process oil meal nor with the cotton seed meal orders and so they must be taken up as independent transactions.

[10] On the first of these orders was endorsed: "To be shipped when ordered." On the confirmation slip was written: "To be shipped when ordered prior to October 1, 1920," and "if unable to fill this order by reason of causes beyond our control it is understood and agreed that we shall not be liable to you in damages for nondelivery of the same."

Afterwards, and in January, 1921, two tons of this

product was shipped and paid for at the price stipulated in the twenty-five ton order.

The minds of the parties never met. The change in the date of shipment was a material variation. The purchaser in its order could have delayed it indefinitely. The confirmation declared that the matter should be closed before October 1, 1920, and provided also that the vendor should be relieved from performance of its part of the contract should any cause beyond its control intervene. Such a unilateral contract amounted to nothing at all. *American Agricultural Co.* v. *Kennedy & Crawford, supra.*

The naked fact that two tons were shipped in 1921 does not change the situation. The evidence is silent as to why it was shipped and there is nothing to connect it with the original order except that the price was the same. It was shipped more than two months after the contract as accepted had expired.

The order for sixty tons of cotton seed meal was accepted on terms substantially differing from the order itself. The attitude of the purchaser to these changes is not shown; nothing was afterwards heard of it. The transaction dropped from sight.

[11] These acceptances, if in evidence, could but show that the orders as given were never confirmed and their exclusion, at the most, was harmless error and should be disregarded. *Crum* v. *Hanna*, 140 Va. 366, 125 S. E. 219.

[12, 13] Next it is said that the court erred in refusing to permit an answer to the following question:

"Q. How much dairy feed did they order from you during that year (1921)?"

The relevancy of this question is apparent. We have seen that orders were placed for large quantities of this product and litigations seemed likely. In these circumstances Conner was sent to Washington. The re-

sult of his negotiations with the vendor was that claim for damages would be abandoned provided the defendant purchased for the year 1921 all of its dairy food products from the plaintiff. It was extremely relevant therefore to ascertain whether or not this was done, and so this was a proper question. The difficulty arises out of the fact that there is nothing to show what the answer would have been. The witness might have said that the contract made with Conner had been followed in the letter. It is essential that the record show the disclosures expected in the answer. "This court will not review the action of a trial court in refusing to permit a witness to answer a question when it is not shown what answer would have been made to the question." Head note 4, *Lynchburg Cotton Mills* v. *Rives,* 112 Va. 137, 70 S. E. 542; *Douglas Land Co.* v. *Thayer,* 107 Va. 292, 58 S. E. 1101; Burks' Pleading and Practice (2nd ed.), page 509, section 273.

This judgment cannot be set aside (1) because no damages have been proven, and (2) because no other verdict could have been reached. This is true had all the rejected evidence shown in the record been admitted. It but shows that the contracts for the purchase of dairy food products were superseded by another contract which does not appear to have been broken, while those which relate to Old Process oil meal and to cotton seed meal were confirmed upon conditions which materially changed their substance and which in their modified form were not in turn confirmed. For these reasons it is unnecessary to consider the remaining assignments of error. They deal with instructions and present no matters of general interest.

There are no errors in the record to the substantial prejudice of the plaintiff and the judgment should be affirmed.

*Affirmed.*